# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ROBERT L. FERLUGA,**

        **Plaintiff,**

        **v.**                              **Case No. 05-2338-JWL**

**STEPHANIE EICKHOFF, et al.,**

        **Defendants.**

_____

## MEMORANDUM AND ORDER

Plaintiff Robert L. Ferluga filed this lawsuit based on allegations that city officials conspired to impose arbitrary and bogus requirements on his intended use of a particular parcel of land, to delay and escalate his costs by means of fraudulent practices, and to stonewall his attempts to comply with the city's requirements, thus preventing him from resuming his excavation operations, all in a common scheme to attempt to force him and other low income people to liquidate their property through infliction of financial loss and fear. He asserts one claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, against a myriad of individuals allegedly associated with the City of Edwardsville, Kansas. This matter is before the court on defendants' motions to dismiss plaintiff's complaint (Docs. 6, 26 & 31)[1] and plaintiff's motion to amend his complaint (Doc. 23). For

_____

[1] The court will grant defendants' motion to strike (Doc. 44) plaintiff's pleading entitled "Response to 'Defendants' Reply Memorandum in Support of Motion to Dismiss.'" This court's local rules allow for the filing of a motion accompanied by a brief or memorandum, a response in opposition to the motion, and a reply memorandum. *See* D. Kan. Rule 7.1.

the reasons explained below, the court will grant defendants' motions to dismiss and deny

plaintiff's motion to amend, but grant plaintiff leave to file an amended complaint under the

terms and conditions set forth below on or before **January 20, 2006**.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

The allegations in Mr. Ferluga's complaint arise from his ownership of a parcel of land

in or near Edwardsville, Kansas.  In March of 2003, he acquired the parcel of land which has

more than five hundred feet of frontage on K-32 (a four-lane divided highway) near Interstate

435.  The land is located adjacent to property that was at that time owned by Donna and Ralph

Trout, and a third parcel owned by James Eickhoff and defendant Stephanie Eickhoff, who is

the mayor of Edwardsville.  When Mr. Ferluga purchased the land it contained a high mound

of dirt containing "Rock Flower," which Mr. Ferluga alleges is a choice fill material.   Mr.

Ferluga began excavating the land by selling off the top soil and the fill material.  He alleges

that he "graded without incident for about one year."  (Civil Compl. (Doc. 1), ¶ 5, at 7.)

Shortly before April 4, 2004, defendant Douglas Spangler, Edwardsville's city

administrator, contacted Mr. Ferluga and instructed him to sell his property to defendant John

---

Plaintiff's self-described "Response" to defendants' reply memoranda is actually in the nature
of a surreply.  There is no provision in the local rules for filing a surreply.  Consequently, the
filing of a surreply is not permitted without leave of court, *First Sav. Bank, F.S.B. v. U.S.
Bancorp*, 184 F.R.D. 363, 367 (D. Kan. 1998), and leave of court was neither sought nor
granted here.

[2] Consistent with the well established standard for evaluating a motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual
allegations in plaintiffs' complaint.

Strand Thurston. Mr. Spangler "recruited" the Edwardsville chief of police to be present at the meeting. Based on the nature of the allegations in plaintiff's complaint, it appears that at the time Mr. Thurston was in some way associated with the business of real estate development in and around Edwardsville.

With respect to the neighboring property owned by the Trouts, Mr. Ferluga alleges that Ms. Eickhoff "used her position to conduct a campaign of hatred and villainization toward Mr. and Mrs. Trout and frequently deployed the city police to their home, instilling humiliation and fear." (*Id.* ¶ 4, at 6.) On July 1, 2004, Mr. and Mrs. Trout were "arrested by municipal officers on highly suspect charges." (*Id.*) Ultimately, the expenses that they incurred associated with their arrest caused them to liquidate their property. The property is now owned by Czar Properties, LLC.

On July 27, 2004, an entourage of city officials visited Mr. Ferluga. They included Mr. Spangler; defendant Patrick Isenhour, who is a member of Edwardsville's city council; defendant John Bayless, a "Contract City Engineer" who was allegedly acting for the benefit of defendant Cook, Flatt & Strobel, Engineers; defendant Daniel Van Patten, a "Contract City Planner" who was allegedly acting for the benefit of defendant HNTB Corporation; and defendant John W. Peters, a "Codes Officer," again presumably for the City of Edwardsville. According to Mr. Ferluga, they "shut down excavation and sales by Oral Decree" and subsequently prevented Mr. Ferluga from achieving code compliance by dictating arbitrary requirements that they said were required in order for him to resume operations.

Mr. Ferluga alleges that various city officials engaged in a common scheme to force low income people, presumably such as himself, to liquidate their property through infliction of financial loss and fear.   Their motive was to "acquire prime location property from low income people at fire sale prices," (*id.* ¶ 8, at 9), in order to further Ms. Eickhoff's negotiating position with developers who were wishing to acquire the strip of land.   He alleges that a real estate project by defendant John Strand Thurston, who is now in federal prison, "appears to have been more or less exempted from City regulation and . . . was not sanctioned for documented felonies."   (*Id.* ¶ 9, at 9.)   He alleges that defendant Murray Rhodes, a surveyor, acted in a symbiotic role with the other defendants to delay and escalate the costs of his project by means of fraudulent pretenses.   He alleges that defendant H. Reed Walker, the "Contract City Attorney," played a deliberate role in the scheme by engineering the stonewalling of his attempts to gain compliance and resume operations.   And he alleges that defendant Phyllis Freeman, the "City Clerk," stonewalled his attempts to view a full set of required exhibits on one of Mr. Thurston's excavation projects.

Mr. Ferluga alleges that in 2003 and 2004, David Wilson sought to split acreage north of Mayor Eickhoff's land.   At that time, Mr. Spangler called in Messrs. Van Petten and Bayless and they confronted Mr. Wilson with a host of expensive and time consuming surveys, studies, etc., similar to the manner in which they treated Mr. Ferluga.   Mr. Rhodes was Mr. Wilson's surveyor, and he allegedly "delayed [the] project and tendered unwarranted, excessive billings." (*Id.* ¶ 12, at 10.)   Mr. Ferluga alleges that this maltreatment was intended to "create an

expectation of future similar treatment for those not tendering 'The Envelope,'" (*id.*), or to encourage Mr. Wilson to abandon his project, which ultimately he did.

Based on these allegations, plaintiff's complaint asserts a single RICO claim against what he refers to as the "[g]overnment structure of City of Edwardsville," (*id.* ¶ 13, at 11), which includes Mayor Eickhoff; Mr. Spangler; city councilpersons John H. Broman, Jennifer Burnett, Mr. Isenhour, Timothy Kelly, and Bob Lane; "Public Officer" James W. Befort; Ms. Freeman; Mr. Peters; "City Maintenance" John Sower; Mr. Walker; Mr. Van Petten and HNTB Corporation; Mr. Bayless and Cook, Flatt & Strobel; Mr. Rhodes; and Mr. Thurston.   The following three groups of defendants have now filed motions to dismiss: (1) defendants Eickhoff, Spangler, Broman, Burnett, Isenhour, Kelly, Lane, Befort, Freeman, Peters, Sower and Walker; (2) defendants Van Petten, HNTB Corporation, Bayless, and Cook, Flatt & Strobel; and (3) defendant Rhodes.   All of these defendants seek dismissal on essentially the same grounds.   First, they contend that plaintiff has failed to allege fraud and conspiracy with sufficient particularity as required by Fed. R. Civ. P. 9(b).   Second, they argue that plaintiff's complaint fails to state a claim upon which relief can be granted.

Plaintiff has responded to these arguments and, more importantly, has filed a motion for leave to file an amended complaint containing more detailed factual allegations.   In his proposed amended complaint he alleges, for example, that before he purchased his property he contacted Mr. Spangler, explained his plans for the property, and acquired the property after "receiving encouragement."   (Proposed Civil Compl. ¶ 9, at 10.)   When he contacted the City in March of 2003 regarding his proposed plans for the property, the city clerk "only cite[d] the

need for a Demolition Permit and the need to gain State Hwy. Dept. approval of access to K-32." (*Id.* ¶ 10, at 10.)   Then, shortly after he moved into the old house on his site, Mayor Eickhoff asked him, "If a developer wanted to buy this strip of land would you be willing to sell?"   He alleges that Mayor Eickhoff had a "dream of a developer assembling a strip along the north side of K-32 that would include taking the Trout and Ferluga properties."   (*Id.* ¶ 6, at 6-7.)   When the entourage of city officials visited Mr. Ferluga's property on July 27, 2004, they referenced "issues" and "mud on the street," told him that he lacked a grading permit, and Mr. Bayless told him that to obtain such a permit he would need to commission a drainage study, which Mr. Ferluga later learned was untrue.   That same day, Mr. Van Petten told him that the city's review process could not begin without prior approval by the Kansas Department of Health and Environment of an "NOI" permit.   Mr. Ferluga alleges that Messrs. Walker, Befort, Broman and Ms. Freeman have required of him "expensive services of no value to Plaintiff not required of others, escalating 'requirements,' bogus requirements, refusing to clearly define details of the complex requirements, refusing to cooperate with professionals who needed more specific details to be able to supply the City with data the City would find to be acceptable, and refusing to meet with Plaintiff's attorney to work out this situation." (*Id.* ¶ 13, at 14.)   Then, Mr. Ferluga was charged with a violation of city ordinance when he was unable to cleanup the site because city officials had left him with his property "frozen."   This charge against Mr. Ferluga was dismissed at an informal hearing.   The amended complaint further alleges suspicious circumstances associated with the property formerly owned by the Trouts and now owned by Czar Properties.   It also contains factual allegations which suggest that city

officials have not imposed similar requirements on at least some of Mr. Thurston's development projects.

Defendants ask the court to deny plaintiff's motion to amend because, defendants contend, the amendment would be futile. Defendants argue that the facts contained in the proposed amended complaint do not remedy the inherent failure to state a RICO claim.

### STANDARD FOR A MOTION TO DISMISS AND FOR EVALUATING A MOTION TO AMEND ON GROUNDS OF FUTILITY

With respect to plaintiff's motion to amend, the Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course or, after a responsive pleading has been filed, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision whether to grant leave to amend is within the discretion of the district court. *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The court may justifiably refuse leave to amend on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim." *Schepp v. Fremont County*, 900 F.2d 1448, 1451 (10th Cir. 1990). Both plaintiff's motion to amend and

defendants' motions to dismiss, then, are governed by the standard for a motion to dismiss for failure to state a claim upon which relief can be granted.

The court will dismiss a cause of action for failure to state a claim only when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief,'" *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Beedle*, 422 F.3d at 1063. The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

When, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In other words, "[n]ot every fact must be described in specific detail, . . . and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation omitted). The liberal

construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* (same). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (same).

## DISCUSSION

The court has carefully reviewed the allegations in plaintiff's complaint and his proposed amended complaint. For the reasons explained below the court concludes that his original complaint fails to state a claim upon which relief can be granted. Defendants' futility arguments, however, do not delve deeply enough into the more detailed factual allegations contained in plaintiff's proposed amended complaint and, consequently, the court is not persuaded that the proposed amendment is necessarily futile. For that reason, the court is inclined to allow plaintiff to amend his complaint. But, although plaintiff has done an admirable job as a pro se litigant thus far, his proposed amended complaint still remains sufficiently unstructured in terms of clarifying which specific acts he is alleging constitute the predicate acts of racketeering activity, the manner in which those acts form a pattern of racketeering activity, the scope of the alleged enterprise, and the manner in which some of the defendants participated in the conduct of the organization such that it is difficult for the court to perform a thorough and meaningful analysis of his RICO claim. For that reason, and mindful of plaintiff's status as a pro se litigant, the court believes that the most efficient manner to proceed is to deny his current motion to amend but nonetheless allow him to have an

9

opportunity to review the court's ruling on the existing motions, revise his complaint if he wishes to do so, and file an amended complaint no later than **January 20, 2006**. Defendants may then test the sufficiency of plaintiff's amended complaint, if they wish to do so, by filing new motions to dismiss. If no such amended complaint is filed by that date, this action will be dismissed with prejudice.

**A.    Pleading With Particularity**

Defendants' threshold argument is that plaintiff's fraud and conspiracy allegations are not pleaded with sufficient particularity. Defendants are correct that a plaintiff must plead the predicate acts of fraud in a RICO claim with particularity. *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (holding predicate acts of mail fraud in a RICO claim must be pleaded with particularity); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (same, mail fraud and wire fraud). But in this case plaintiff alleges predicate acts of extortion, not fraud, and therefore no such heightened pleading standard applies. *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) (clarifying that *Farlow* and *Cayman Exploration Corp.* only require that RICO predicate acts of fraud be pleaded with particularity); *see, e.g.*, *Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1094-95 (D. Kan. 2004) (holding the plaintiff failed to plead predicate acts of mail fraud, wire fraud, and bank fraud with the required degree of particularity). Defendants' argument that plaintiff's allegations of conspiracy are not pleaded with sufficient particularity is without merit for the simple reason that plaintiff is not alleging

10

a conspiracy.  Rather, plaintiff is asserting a RICO claim and that claim is governed by the elements set forth below.

Although the court is rejecting defendants' argument on this point, the court nonetheless wishes to emphasize that plaintiff bears the burden of alleging facts, not conclusory allegations, in support of his RICO claim.  The Federal Rules of Civil Procedure require that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation omitted).  Plaintiff's allegations with respect to some of the RICO elements are a bit suspect in terms of providing some of the defendants with fair notice of the basis for plaintiff's claim against them.  Thus, in filing his amended complaint, plaintiff should focus on outlining in clear, direct, and understandable terms the precise factual allegations (as opposed to conclusory allegations that simply parrot the applicable legal standards) which he believes support each essential element of his RICO claim against each of the defendants.

**B.      Failure to State a RICO Claim**

In order to state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must set forth four elements: (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005); *BankOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th

11

Cir. 1999). These elements are most logically discussed in reverse order, and therefore the court will proceed accordingly.

    *1.    Racketeering Activity*

Racketeering activity is frequently described as a "predicate act" or "predicate acts" which consist of the federal and state crimes identified in 18 U.S.C. § 1961(1). *United States v. Smith*, 413 F.3d 1253, 1268-69 (10th Cir. 2005), *petition for cert. filed*, No. 05-7772 (Oct. 6, 2005). Plaintiff's original complaint specifically alleges three predicate acts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. *Cf. Deck v. Eng'rd Laminates*, 349 F.3d 1253, 1257-58 (10th Cir. 2003) (discussing allegations of extortion as a RICO predicate act, although finding that the conduct alleged in that case did not constitute extortion). The Hobbs Act makes it a crime to obstruct, delay, or affect commerce "by robbery or extortion or attempts . . . to do so." § 1951(a). It defines extortion, in turn, as obtaining "property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." § 1951(b)(2).

Liberally construing the allegations in plaintiff's original complaint, he has alleged the factual basis for three predicate acts of extortion. First, defendants allegedly extorted property from the Trouts by improperly harassing them in such a manner that they ultimately were forced to sell their property to another entity to further the goal of assembling the strip of land so that Mr. Thurston could develop it. Second, they allegedly attempted to extort Mr. Ferluga's property from him by impeding him from being able to use it so that he would likewise sell his adjacent tract of land for development. Third, they treated Mr. Wilson similarly with respect

to his land and arguably attempted to extort money from him.   Accepting these allegations as true, as the court must in evaluating the sufficiency of plaintiff's complaint, the court cannot find that it appears beyond a doubt that these actions do not constitute extortion and attempted extortion for the reasons advanced by the defendants.   In this regard, the court wishes to emphasize that defendants do not discuss the legal contours of the crime of extortion.   They also do not discuss whether each of these alleged predicate acts constitutes extortion, albeit perhaps because the nature of the alleged predicate acts is not crystal clear from plaintiff's complaint.   Rather, they argue that plaintiff's vague allegations of extortion are insufficient to state a claim.   Ultimately, in order to dismiss plaintiff's RICO claim on this basis, the court must be persuaded that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.   Here, defendants simply have not advanced any meaningful argument to persuade the court that the alleged acts necessarily did not constitute extortion, particularly in light of case law suggesting to the contrary.   *See, e.g.*, *United States v. Panaro*, 266 F.3d 939, 948 (9th Cir. 2001) (noting that extortion can occur when either the extortioner or a third person receives the property of which the victim is deprived); *United States v. Tuchow*, 768 F.2d 855, 872-73 (7th Cir. 1985) (evidence was sufficient to sustain extortion conviction where city alderman attempted to extort money in exchange for a building permit).   Thus, the court does not foreclose defendants from raising this issue again, but the court is not willing to grant defendants' motions to dismiss based merely on the argument that they have advanced thus far.

13

The extent to which plaintiff might be alleging that other conduct constitutes additional predicate acts of racketeering activity is unclear.  For example, he seems to be asserting vague allegations and suspicions that Mr. Thurston was perhaps bribing city officials, although he does not specifically allege this conduct as another predicate act.  In filing his amended complaint, if plaintiff wishes for this other conduct to be considered as additional predicate acts that form the basis of his RICO claim, he should specifically allege this, but of course in doing so he should be mindful of his obligations under Rule 11 of the Federal Rules of Civil Procedure (discussed below).  Otherwise, the court will not consider this alleged conduct as other predicate acts for purposes of evaluating plaintiff's RICO claim.

2.      *Pattern*

"A pattern of racketeering activity must include commission of at least two predicate acts." *Garrett*, 425 F.3d at 838; *see also* 18 U.S.C. § 1961(f).  As just explained, plaintiff has already alleged two predicate acts.  But the existence of two predicate acts is not sufficient to establish a pattern of racketeering activity.  *Smith*, 413 F.3d at 1269.  In order to satisfy RICO's "pattern" requirement, the Supreme Court has focused on two elements: (1) relationship; and (2) continuity.  *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990).  Specifically, the plaintiff must show "'a relationship between the predicates' and 'the threat of continuing activity.'"  *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  "Thus, to properly allege a pattern of racketeering activity as required by RICO, [plaintiff] must identify a minimum of two instances of racketeering activity as defined in § 1961(1) which amount to, or otherwise

14

constitute a threat of continuing racketeering activity by the enterprise." *Bacchus Indus. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991).

The allegations in plaintiff's original complaint fall short of this requirement, and for that reason defendants' motions to dismiss are granted. Plaintiff's complaint alleges a single scheme (to harass property owners near Mayor Eickhoff's land) to accomplish a discrete goal (to make them amenable to selling their land so that all of the parcels could be assembled and sold for development) directed at a finite group of individuals (the adjacent landowners) with no potential to extend to other persons or entities. These allegations do not involve "the type of long-term criminal activity envisioned by Congress when it enacted RICO." *Duran*, 238 F.3d at 1271 (affirming the district court's dismissal of plaintiff's RICO claim where the defendant engaged in a single scheme of conduct to accomplish a discrete goal directed at a finite group of individuals with no potential to extend to other persons or entities); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (same); *see also SIL-FLO, Inc.*, 917 F.2d at 1516 (affirming the district court's grant of summary judgment under similar circumstances). Thus, plaintiff's original complaint fails to state a claim for a RICO violation.

But, nevertheless, the expanded factual allegations in plaintiff's proposed amended complaint arguably make some progress on this element. Suffice it to say at this procedural juncture that defendants have not advanced any argument in opposition to plaintiff's motion to amend that persuades the court that the amendment would necessarily be futile with respect to this element. Accordingly, the court will allow plaintiff to file an amended complaint to

15

attempt to correct this pleading deficiency to the extent that he can do so consistent with his Rule 11 obligations.

3.    *Enterprise*[3]

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The existence of an enterprise requires proof (1) of an ongoing organization with a decision-making framework or mechanism for controlling the group, (2) that the various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity.  *Smith*, 413 F.3d at 1366-67.  With respect to this last element, "it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." *Id.* at 1267 (quotation omitted).

Defendants argue that plaintiff's allegation that the enterprise consists of the government structure of the City of Edwardsville, Kansas, is insufficient.  Defendants have cited no authority for this legal proposition, and the court has found ample authority to the

---

[3] Although the court finds that the arguments defendants have advanced with respect to this element to be without merit, the court nonetheless is concerned about plaintiff's allegations with respect to this element of plaintiff's RICO claim for other reasons.  *See, e.g.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (noting that a plaintiff's conclusory naming of a string of entities does not adequately allege an enterprise).  Thus, plaintiff would be well advised to devote some attention to his factual allegations with respect to this element.

contrary.  *See United States v. Urban*, 404 F.3d 754, 770 (3d Cir.) (city's construction services department, which employed plumbing inspectors who improperly accepted payments from plumbers whose work they inspected, was an "enterprise" for purpose of RICO convictions), *cert. denied*, 126 S. Ct. 732 (2005); *United States v. Cianci*, 378 F.3d 71, 82-83 (1st Cir. 2004) (municipal entities could be part of enterprise charged under RICO); *De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) (jury could reasonably have concluded that an assortment of public officials, private individuals and corporations who used political power to influence governmental authority over the plaintiff's development constituted an enterprise for RICO purposes; noting that a governmental unit can be a RICO enterprise).[4]  Of course, governmental actors who try to force citizens to comply with ordinances and permit requirements do not automatically violate RICO.  The other elements of a RICO violation also must be established in order for governmental entities and/or actors to be held liable under RICO.  Thus, in this case, for example, plaintiff must ultimately prove that the defendants' conduct constituted extortion in violation of the Hobbs Act.  The court is simply holding at this

---

[4] Related to this argument is defendants' contention that plaintiff cannot state a claim against these defendants in their official capacity.  The court will not address the legal merits of this argument because it is factually inapposite.  Plaintiff's complaint does not state whether these individuals are being sued in their official or individual capacities.  It merely states their alleged role in connection with the city government, and hence presumably their role in the alleged enterprise.

Defendants also argue that plaintiff fails to allege that the enterprise was engaged in interstate commerce.  Defendants cite no authority to support this argument.  For this reason alone, the court rejects this particular argument.

procedural juncture that defendants' categorical argument that a governmental entity cannot constitute a RICO enterprise is without merit.

    *4.      Participation in Conduct*

    "The Supreme Court has adopted the 'operation or management' test to determine whether a defendant has participated in the conduct of the affairs of a RICO enterprise." *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999) (quotation omitted). This means that for liability to exist

> the defendants must have participated in the operation or management of the RICO enterprise. One must have some part in directing those affairs of the enterprise, although it is not necessary for the participant to have significant control. The word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Id.* at 1100-01 (quotations, citations, and brackets omitted; emphasis in original).

    Plaintiff's allegations against many of the defendants fall short of this standard. Most obviously, neither plaintiff's original complaint nor his proposed amended complaint allege that defendants Broman, Burnett, Kelly, Lane, Befort, or Sower did anything at all, much less participate in the conduct of the alleged RICO enterprise. Because the court is already granting defendants' motions to dismiss because plaintiff has failed to allege a pattern of racketeering that constitutes a threat of continuing racketeering activity, the court will not sort through plaintiff's claims against the various defendants at this procedural juncture but instead will revisit this issue if necessary upon consideration of the sufficiency of the allegations in

plaintiff's amended complaint.   The court does, however, caution plaintiff that in revising his amended complaint he may wish to devote special attention to this particular element in deciding whether to re-assert his RICO claim against all of the individuals and entities named in his original complaint.

## C.    Rule 11 Admonition

Lastly, the court wishes to make sure that Mr. Ferluga is both aware of and mindful of his obligations under Rule 11 of the Federal Rules of Civil Procedure if he elects to revise his allegations and file an amended complaint.   Rule 11 provides, in part, as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney *or unrepresented party* is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> . . . .
>
> [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b) (emphasis added).   The court may sanction an attorney, a law firm, or a pro se litigant for violating this rule.   Rule 11(c); *see generally, e.g.*, *Wesley v. Don Stein Buick, Inc.*, 184 F.R.D. 376 (D. Kan. 1998) (sanctioning a pro se litigant for advancing a patently frivolous argument).   In so admonishing Mr. Ferluga, the court is not at all suggesting that any of his current pleadings have run afoul of this rule.   The court simply wishes to clarify that it is not inviting Mr. Ferluga to revise his complaint to assert baseless allegations.   Instead, the court encourages Mr. Ferluga to reevaluate his RICO claim, particularly its scope, and

ensure that he abides by his obligations under Rule 11 if he elects to file an amended complaint. Although the court will grant Mr. Ferluga a certain degree of latitude in terms of his arguable lack of expertise regarding the applicable law given his status as a pro se litigant, his status as a pro se litigant does not warrant a similar degree of latitude with respect to the facts.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions to dismiss (Docs. 6, 28 & 31) are granted and plaintiffs' motion to amend (Doc. 23) is denied without prejudice to plaintiff filing an Amended Complaint on or before **January 20, 2006**.

**IT IS FURTHER ORDERED** that defendants' motion to strike (Doc. 44) is granted.

**IT IS SO ORDERED** this 6th day of January, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

20