## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ROBERT L. FERLUGA,**

> **Plaintiff,**

> **v.**                                      **Case No.  05-2338-JWL**

**STEPHANIE EICKHOFF, et al.,**

> **Defendants.**

_____

### MEMORANDUM AND ORDER

Plaintiff Robert L. Ferluga filed this lawsuit based on allegations that various city officials and related individuals acted in concert to prevent his desired use of a tract of land that he owns in Edwardsville, Kansas.  His amended complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against a myriad of individuals allegedly associated with the City of Edwardsville, Kansas.  This matter is before the court on defendants' motions to dismiss plaintiff's amended complaint (Docs. 63 & 65).  For the reasons explained below, the court will grant defendants' motions to dismiss, but will grant plaintiff leave to file a second amended complaint asserting claims under 42 U.S.C. § 1983 on or before **April 24, 2006**.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

_____

[1] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in plaintiff's amended complaint.

Plaintiff's original complaint in this case asserted a RICO claim against various defendants. Defendants moved to dismiss that claim, and the court granted their motions in a previous Memorandum and Order, familiarity with which is presumed. *See generally Ferluga v. Eickhoff*, 408 F. Supp. 2d 1153 (D. Kan. 2006). In that Memorandum and Order, the court held that although plaintiff had arguably alleged three predicate acts of extortion, he had failed to allege a pattern of racketeering activity as required by RICO. *Id.* at 1159-61. Consequently, the court granted defendants' motions to dismiss, but without prejudice to plaintiff filing an amended complaint. Plaintiff then filed an amended complaint in which he has reasserted his RICO claim along with expanded allegations concerning additional alleged predicate acts of extortion. In plaintiff's amended complaint he also has added a *Bivens* claim.

To briefly recap the allegations in plaintiff's original complaint, this lawsuit arises from plaintiff's ownership of a parcel of land along highway K-32 in or near Edwardsville, Kansas. The land is located near property that was formerly owned by Donna and Ralph Trout, another parcel owned by James Eickhoff and defendant Stephanie Eickhoff (who is the mayor of Edwardsville), and another parcel owned by Mr. Wilson. Plaintiff alleges that Mayor Eickhoff had a dream that a developer would assemble a strip of land along the north side of K-32 that would include taking the Trout and Ferluga properties, presumably among others. Law enforcement officers, allegedly working to some degree in concert with the Eickhoffs, charged the Trouts with dubious attempted first-degree murder charges that ultimately were dismissed. The Trouts were forced to sell their property because of the legal fees they incurred. Based on the allegations in plaintiff's complaint it can be inferred that the entity that purchased their property may have been linked to the Eickhoffs. Around this same time period, city administrators and officials harassed plaintiff by imposing a

2

series of bogus requirements on his intended use of his property, they stonewalled his attempts to comply with the city's requirements, and they charged him with a violation of a city ordinance for which no one had ever been charged before.  These requirements were not imposed on others in similar circumstances, and defendants allegedly engaged in this conduct in an effort to attempt to force him to sell his property.  They treated Mr. Wilson similarly by also imposing unnecessary requirements on him in an attempt to extort money from him or to encourage him to abandon his project, which ultimately he did.

Plaintiff's amended complaint now includes allegations of additional predicate acts.  One of these alleged predicate acts pertains to land owned by Margaret Pavacich.  Plaintiff alleges that his employee informed him that Douglas Spangler, who is the City Administrator of Edwardsville, and another man "tried to screw my (elderly) Aunt Margaret out of her farm up by 110th and I-70, just South of Village West and NASCAR."  (Civil Compl. (Amended) (Doc. 58), ¶ 13, at 14.) Apparently, Ms. Pavacich was offered a small amount for her eighty acres.  Later, Ms. Pavacich arranged to sell her property for approximately thirty times the amount that Mr. Spangler's potential buyer had formerly offered to her.  But, that deal was sabotaged by a demand that the developer pay a $75,000 deposit to the City.  Plaintiff alleges that the City's scheme against him and the previous incident involving Ms. Pavacich reveal a pattern of city officials attempting to take advantage of ordinary citizens who may not realize how valuable their property has quietly become.

Plaintiff's amended complaint also alleges that Victor G. Construction received preferential treatment in the letting of City contracts.  On April 28, 2005, Victor G. Construction repaired a short section of the Mayor's driveway.  It was a small, handyman-type project but it "received regal treatment that appears would normally have been billed for thousands of dollars."  (*Id.* ¶ 37, at 37.)

3

Later that year, in October of 2005, Victor G. Construction was awarded a contract for repairs to the playground area of the city park.  This contract came about under arguably suspicious circumstances.  The City invited bids for the project which were due on October 17, 2005.  But, on October 14, 2005, the City Council held an "emergency" meeting and determined that Victor G. Construction was the low bidder.  Victor G. Construction commenced work on October 15, 2005.  At some time later, the City received a report that the work did not conform to the specifications.

In August of 2005, at another "emergency" meeting by the City Council, the City loaned $20,000 to IGA Express, which then promptly closed.  Plaintiff alleges that Mr. Spangler and the operator of the IGA Express store were gambling buddies.  Plaintiff states that he wishes to conduct discovery to confirm or discredit reports that Mr. Spangler pushed this loan and to investigate cash withdrawals or transfers to city officials.

Plaintiff also alleges that when Mr. Spangler's contract as City Administrator came up for renewal in December of 2005, Mayor Eickhoff voiced no objection.  All council members except Jennifer Burnett voted for renewal.  The City retaliated against Ms. Burnett by citing the trailer park that she managed.

Plaintiff's amended complaint recaps that these alleged predicate acts reveal a culture of corruption by which defendants have engaged in a pattern of racketeering activity by virtue of their actions towards plaintiff, the Trouts, Mr. Wilson, Ms. Pavacich, as well as evidence of preferential treatment of projects of dubious legitimacy, hints of extortion of bribes and kick-backs, and the grocery store "loan" scheme.  In plaintiff's amended complaint, he also asserts a *Bivens* claim, the precise contours of which is not entirely clear.  Defendants now ask the court to dismiss plaintiff's

4

RICO and *Bivens* claims on the grounds that plaintiff's complaint fails to state a claim upon which relief can be granted.

### STANDARD FOR A MOTION TO DISMISS

The court will dismiss a cause of action for failure to state a claim only when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief,'" *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.  *Beedle*, 422 F.3d at 1063.  The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

When, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In other words, "[n]ot every fact must be described in specific detail, . . . and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation omitted).  The liberal construction of the plaintiff's complaint,

however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* (same). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (same).

## DISCUSSION

The court has carefully reviewed the allegations in plaintiff's amended complaint and concludes that it still fails to state a claim upon which relief can be granted. Although plaintiff has had an opportunity to amend his complaint to cure pleading deficiencies in his RICO claim, his complaint still fails to allege the requisite pattern of racketeering activity[2] and therefore plaintiff's RICO claim is dismissed. Plaintiff's amended complaint also fails to state a *Bivens* claim because plaintiff alleges that the defendants are municipal, not federal, officials. The court will, however, grant plaintiff leave to file a second amended complaint asserting his claim or claims pursuant to 42 U.S.C. § 1983.

## A.     RICO Claim

In order to state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must set forth four elements: (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005); *BankOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999).

   *1.     Racketeering Activity*

---

[2] If the facts alleged by Mr. Ferluga are true, then there may have been a pattern of wrongdoing by the defendants. All the court is saying is that such conduct would not be actionable under RICO.

6

In analyzing whether plaintiff has cured the prior pleading deficiency by alleging the requisite "pattern" of racketeering activity, the court must first identify the alleged predicate acts of racketeering activity.  Racketeering activity is frequently described as a "predicate act" or "predicate acts" which consist of the federal and state crimes identified in 18 U.S.C. § 1961(1).  *United States v. Smith*, 413 F.3d 1253, 1268-69 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1093 (2006).  Plaintiff states that his case is based on predicate acts of extortion.  Defendants contend that the predicate acts do not constitute extortion under the Supreme Court's holding in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003).  The court does not agree with defendants' argument based on *Scheidler*.

*Scheidler* involved a claim by a women's rights organization (NOW) and abortion clinics that an antiabortion protest network violated RICO by conspiring to shut down abortion clinics through a pattern of racketeering activity that included acts of extortion in violation of the Hobbs Act.  *Id.* at 398.  The Hobbs Act makes it a crime to obstruct, delay, or affect commerce "by robbery or extortion or attempts or [conspiracy] so to do."  18 U.S.C. § 1951(a).  The Hobbs Act, in turn, "defines extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'"  *Scheidler*, 537 U.S. at 400 (quoting 18 U.S.C. § 1951(b)(2)).  The Court explained that even when the abortion protesters' "acts of interference and disruption achieved their ultimate goal of 'shutting down' a clinic that performed abortions, such acts did not constitute extortion because petitioners did not 'obtain' respondents' property."  *Id.* at 404-05.  The Court found that although the abortion protesters had interfered with, disrupted, and deprived abortion clinics of their ability to exercise their property rights, that conduct did not violate the Hobbs Act because the protesters did not

7

actually "obtain" or "acquire" the clinics' property. *Id.* at 405. The Court noted that the protesters "neither pursued nor received something of value from [the abortion clinics] that they could exercise, transfer or sell." *Id.* Defendants contend that under *Scheidler* in order for activity to constitute extortion (and hence a RICO predicate act) the defendants must actually "obtain" property; consequently, plaintiff has failed to plead extortion because plaintiff does not allege that an extortionist or a third party received any property. The Court's holding in *Scheidler*, however, is not so limited. The thrust of the Court's reasoning is that the abortion protesters were seeking to shut down abortion clinics, not to obtain them. *Scheidler* did not "uncriminalize" attempts or conspiracies to engage in extortion which plainly fall within the statutory language of the Hobbs Act as long as those attempts or conspiracies are targeted at "obtaining" property, not merely depriving or interfering with property. With that clarification concerning the nature of the Court's holding in *Scheidler*, then, the court turns to plaintiff's alleged predicate acts of extortion.

The court has no difficulty concluding that the predicate acts involving the Trout and Ferluga properties which were alleged in plaintiff's original complaint (and which plaintiff continues to allege as predicate acts in his amended complaint) adequately allege events which arguably constituted extortion. Admittedly, with respect to the parcel of land owned by plaintiff, defendants may have done nothing more than merely improperly interfere with the use and enjoyment of their land. But, liberally construing the allegations in plaintiff's amended complaint as the court must at this procedural juncture, the court cannot say that it appears beyond a doubt that defendants were not attempting or conspiring to obtain the property owned by plaintiff in order to further Mayor Eickhoff's alleged dream of assembling a strip of land for development. Additionally, with respect to the parcel of land formerly owned by the Trouts, someone actually obtained that property and it

8

could certainly be inferred from the allegations in plaintiff's amended complaint that this was accomplished by way of Mayor Eickhoff and other city officials using improper means.

As for plaintiff's allegations concerning defendants' similar treatment toward Mr. Wilson, plaintiff has now clarified that the Wilson property is not contiguous to the Trout, Ferluga, and Eickhoff properties.  As such, the Wilson property no longer seems to be a part of the alleged Eickhoff development scheme.  Plaintiff's theory with respect to the Wilson land is that defendants' mistreatment of Mr. Wilson "may have been to encourage [him] to abandon his project (which he did) or to create expectation of future similar treatment for those not tendering 'The Envelope.'  The latter, setting the stage for the taking of illegal payments from subsequent would-be developers." (Civil Compl. (Amended) (Doc. 58), ¶ 35, at 34.)  Thus, plaintiff is no longer alleging that defendants were attempting to actually "obtain" Mr. Wilson's property for development.  Rather, insofar as plaintiff alleges that defendants wanted Mr. Wilson to abandon his project, that allegation is one of deprivation or interference with Mr. Wilson's use and enjoyment of his land.  Under the Supreme Court's holding in *Scheidler*, this type of conduct does not constitute extortion under the Hobbs Act.

The remainder of plaintiff's allegations concerning Mr. Wilson's property involves plaintiff's allegations that some of the defendants were attempting to extort bribes from Mr. Wilson.  Plaintiff makes similar allegations throughout his complaint which he accurately summarizes as "hints" of extortion and kickbacks.  (*Id.* ¶ 41, at 42.)  Plaintiff's amended complaint, however, does not include any facts which support those vague, generic, and conclusory suspicions of attempts to extort bribes. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (noting that although the court should liberally construe a pro se plaintiff's complaint, "the court should not assume the role of

advocate, and should dismiss claims which are supported only by vague and conclusory allegations"). For example, he alleges that defendants' mistreatment of Mr. Wilson "may have been" to create an expectation that landowners must bribe city officials in order to obtain necessary approvals for land developments, but he has alleged no facts which support that theory. Consequently, this aspect of plaintiff's allegations concerning Mr. Wilson does not amount to a RICO predicate act.

Similarly, plaintiff's amended complaint does not allege that the defendants said or did anything from which it could be inferred that they expected to receive bribes from him. His theory in this respect seems to be twofold. First, John Strand Thurston, a felon convicted of real estate related crimes, did not encounter the same obstacles that plaintiff and Mr. Wilson encountered. Plaintiff's amended complaint, however, does not allege any facts beyond his mere vague and conclusory suspicions from which it could be inferred that city officials treated Mr. Thurston's development more favorably because Mr. Thurston had "greased the wheels," so to speak. The mere fact that Mr. Thurston may have been convicted of real estate related crimes somewhere at some time and that the mayor and city council members knew of his criminal background does not give rise to a reasonable inference that the city officials who are the defendants in this lawsuit extorted bribes from him for his developments in Edwardsville. Without more specific factual allegations relating to Mr. Thurston's interactions with the City of Edwardsville, then, plaintiff's amended complaint does not state a claim for extortion under this theory.

Second, plaintiff complains that defendants increased the cost of his development by imposing arbitrary and bogus requirements on him. The court wishes to clarify that, other than the Eickhoff development scheme described above, plaintiff's complaint does not contain any

10

allegations from which it could be inferred that any of the defendants were attempting to extort bribes from plaintiff in the sense that they were seeking some other form of wrongful personal enrichment. For example, although plaintiff alleges that an entourage of defendants visited him at his site, referenced various issues, permits and studies, plaintiff does not allege that they did this under the pretense of expecting to receive bribes from plaintiff. Rather, plaintiff alleges that they did this to "shut[] down grading and sales" in an attempt to force him to liquidate his property. (Civil Compl. (Amended) (Doc. 58), ¶ 16, at 17 and ¶ 19, at 21.) Plaintiff also alleges that Mr. Broman told him that he needed to clean up his site, but again plaintiff does not allege any facts which suggest that Mr. Broman was expecting a bribe from plaintiff. Although plaintiff alleges that the cleanup plan which Mr. Broman suggested "le[ft] room for kick-backs," (*id.* ¶ 27, at 28), plaintiff does not allege that Mr. Broman said or did anything to suggest that Mr. Broman himself expected to receive a bribe. Plaintiff also alludes to suspicions by others that the City of Edwardsville was attempting to extort bribes and plaintiff makes categorical references to city corruption. As with respect to plaintiff's allegations concerning defendants' alleged extortion of bribes from Mr. Wilson, these allegations are simply too vague and conclusory to constitute RICO predicate acts of extortion. Thus, the thrust of plaintiff's allegations in this respect is that defendants' "obstructionist tactics," (*id.* ¶ 6, at 6), impeded his proposed development, which, under *Scheidler*, is not actionable as extortion. Extortion is only actionable insofar as defendants were seeking to "obtain" something from plaintiff by virtue of their actions. As the court has explained above, plaintiff's amended complaint states a claim for extortion with respect to his property insofar as he is alleging that defendants' actions were geared toward forcing him to sell his property for development. The court

simply wishes to clarify that, with respect to plaintiff's attempted development of his tract of land, plaintiff's amended complaint does not state a claim for extortion in any other respect.

Moving along to the newly alleged predicate acts, then, plaintiff's amended complaint now alleges three additional predicate acts involving the parcel of land owned by Ms. Pavacich, the City's preferential treatment of Victor G. Construction with respect to the playground area of the city park, and the City's loan to the IGA Express. Additionally, although not specifically alleged as a predicate act, the court notes that plaintiff's amended complaint also alleges that the City arguably treated Ms. Burnett somewhat similarly to the manner in which it treated plaintiff by citing the trailer park she manages, presumably for violations of city ordinances.

With respect to the parcel of land owned by Ms. Pavacich, plaintiff essentially alleges that someone attempted to obtain her land by giving her a lowball offer. But, there is no suggestion that any of the defendants used wrongful means in this endeavor. Someone simply made her an offer at less than market value and she refused that offer. With respect to the subsequently required $75,000 deposit to the City, plaintiff does not allege that any of the defendants were attempting to obtain Ms. Pavacich's property by virtue of sabotaging that deal. In fact, plaintiff specifically alleges that the scenario involving Ms. Pavacich reveals that city officials were attempting to take advantage of ordinary citizens who may not have realized how valuable their property had quietly become. Merely taking advantage of people, however, does not constitute extortion. Therefore, the scenario involving Ms. Pavacich's land does not state a claim for extortion.

Plaintiff's allegations concerning the City's preferential treatment of Victor G. Construction in the letting of City contracts adequately states a claim for extortion. Arguably, Mayor Eickhoff obtained something of value—namely, repairs to a small section of her driveway in a regal manner

that would have cost most people thousands of dollars.  In exchange for this, later that year the City awarded Victor G. Construction the contract for repairs to the playground area of the city park.  Moreover, the contract was awarded under suspicious circumstances at a purported emergency meeting before the bid deadline had expired.  The court cannot say that it appears beyond a doubt that plaintiff can prove no set of facts under which this could constitute extortion.

With respect to plaintiff's allegations concerning the City's $20,000 loan to IGA Express, plaintiff has not alleged any facts from which it could be inferred that this loan constituted extortion. To be sure, the loan may have been a shady deal inasmuch as it could be inferred that it was made to satisfy Mr. Spangler's alleged gambling debt to the operator of the store.  But extortion involves obtaining property from another by wrongful means.  In the IGA Express loan scenario, the IGA Express rather than the defendants allegedly obtained property by wrongful means.  The fact that plaintiff states that he would like to investigate cash withdrawals or transfers to city officials does not alter the court's analysis of this alleged predicate act.  This statement does not become a factual allegation simply because plaintiff desires to conduct discovery on this issue.  Consequently, this incident does not state a claim for extortion.

Plaintiff's allegations concerning adverse action that the City took against Ms. Burnett also do not state a claim for extortion.  The fact that the City cited the trailer park that Ms. Burnett managed allegedly in retaliation for her voting against renewal of Mr. Spangler's contract may have been inappropriate and perhaps even unlawful in some respect.  But, such conduct does not constitute extortion because it does not appear that anyone was attempting to obtain the trailer park property as opposed to merely depriving or interfering with her use and enjoyment of the property.

In sum, plaintiff has adequately alleged RICO predicate acts of extortion with respect to the incidents concerning plaintiff's land, the land formerly owned by the Trouts, and the incident involving the city playground contract with Victor G. Construction. The court, then, will proceed with analyzing whether these predicate acts involve the requisite "pattern" of criminal activity necessary to state a RICO claim.

   2.   *Pattern*

RICO defines a pattern of racketeering activity as requiring "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). "But a finding that two predicate acts were committed within this time frame--as is the case here--is not sufficient to establish a pattern of racketeering activity." *United States v. Smith*, 413 F.3d 1253, 1269 (10th Cir. 2005). Under RICO's pattern requirement, the plaintiff must "show two elements--'a relationship between the predicates' and 'the threat of continuing activity.'" *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

"Predicate acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events.'" *Smith*, 413 F.3d at 1269 (quoting *H.J. Inc.*, 492 U.S. at 240). Construing the allegations in plaintiff's amended complaint in the light most favorable to plaintiff, the first two predicates have similar purposes (to force landowners near the Eickhoffs to sell their property so that a strip of land could be assembled along K-32 for development), similar participants (Mayor Eickhoff and other city officials harassing landowners), similar victims (landowners), and similar methods of commission (harassment in a manner intended to impose financial hardship so as to force the landowners to sell their property). But, the relationship between these predicates and the third

14

predicate, which pertains to the City giving preferential treatment to Victor G. Construction in awarding the city playground contract, is tangential.  The third predicate had a different purpose inasmuch as it was intended to give Mayor Eickhoff a new driveway whereas the purpose of the other two predicates was to allow her to profit from selling her property for development.  The third predicate also had different participants.  The mayor and the city council members allegedly awarded the contract to Victor G. Construction; in contrast, the participants in the other two predicates primarily were the mayor and other city compliance officials whereas the city council members' involvement essentially was limited to their complicity.  The third predicate involved a different type of victim—a vendor rather than landowners.  The methods of commission were entirely distinct inasmuch as the incident involving Victor G. Construction involved the preferential treatment in the awarding of a city contract but the other two predicates involved public officials allegedly harassing landowners to attempt to force them to sell their properties.  Although the third predicate had a generally similar result of personally enriching Mayor Eickhoff and it had some of the same participants, it was almost entirely unrelated, bordering on being more properly regarded as sporadic.  Thus, the relationship between the first two predicates and the third is highly tenuous, at best.  This consideration weighs on the court's evaluation of the continuity of the alleged racketeering activity.

Turning to the continuity element, "'it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.'" *Bacchus Indus. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *H.J. Inc.*, 492 U.S. at 240) (emphasis in original).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat

15

of repetition." *H.J. Inc.*, 492 U.S. at 241.  To satisfy closed-ended continuity, the plaintiff must prove "a series of related predicates extending over a substantial period of time."  *Id.* at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *Id.*  To satisfy open-ended continuity, the plaintiff must show a threat of continuing criminal activity beyond the period during which the predicate acts were performed.  *Id.* at 242-43.  Open-ended continuity depends upon the facts of each case, and may be established by showing that the predicate acts themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or that the predicate acts are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.  *Id.* at 242-43.

The Tenth Circuit has stated that two factors are particularly relevant to the continuity inquiry: the duration of the related predicate acts and the extensiveness of the scheme of the RICO enterprise.  *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993).  In evaluating the extensiveness of the alleged scheme, the court considers the number of victims, and number and variety of racketeering acts, whether the injuries caused were distinct, the complexity and size of the scheme, and the nature or character of the enterprise or unlawful activity.  *Id.* at 1543-44.  The court analyzes these factors as indicia of continuity with the goal of achieving a natural and commonsense result.  *Id.* at 1544 & n.9.

Having carefully considered the various factors here, the court concludes that plaintiff's amended complaint does not contain allegations that demonstrate the kind of broad or ongoing criminal behavior at which the RICO statute was aimed.  Liberally construing the dates associated with the alleged extortionate acts in plaintiff's complaint, the predicate acts spanned no more than thirteen months.  The first action defendants took toward plaintiff which arguably could be viewed

16

as extortionate was when Mr. Spangler first contacted, then met with plaintiff (accompanied by the chief of police, for no apparent reason) in April of 2004 about the need for plaintiff to sell his land to a developer.  The events pertaining to plaintiff culminated with him being charged with a violation of the city ordinance in May of 2005.  Meanwhile, the city officials' alleged harassment of the Trouts occurred from July to September of 2004 and Mayor Eickhoff allegedly extorted repairs to her driveway from Victor G. Construction in April of 2005.  This fairly short time period weighs against a finding of continuity, particularly closed-ended continuity.  *See J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (predicate acts spanning thirteen months did not satisfy RICO continuity requirement).

Additionally, the alleged scheme of the RICO enterprise was not extensive.  The Trouts and plaintiffs were the only victims in the development scheme, and Victor G. Construction was the only victim in the mayor's driveway repair plan.  The number and variety of the racketeering acts were fairly minimal, involving the alleged extortion of the Trout and Ferluga properties and the repairs to the mayor's driveway by Victor G. Construction.  The Trouts and plaintiff suffered similar injuries: they were all allegedly wrongfully prosecuted and harassed in an attempt to force them off of their properties.  On the other hand, the injury to Victor G. Construction was distinct: it was forced to make repairs to the mayor's driveway.  Neither of the alleged schemes with respect to the Trout or Ferluga properties were complex or large.  The alleged scheme with respect to Victor G. Construction appears to have been downright simple.  Looking at the nature or character of the enterprise or unlawful activity, this is not a case involving an alleged RICO enterprise that exists for criminal purposes, such as a drug ring or other type of enterprise traditionally regarded as "organized crime."  *See H.J. Inc.*, 492 U.S. at 242-43 (noting open-ended continuity is satisfied where the

17

"predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes"). Rather, the alleged RICO enterprise primarily conducts a legitimate business and, under those circumstances, it must be shown that "the predicates are a regular way of conducting [the defendants'] ongoing legitimate business." *Id.* at 243. No such inference can be drawn here. Plaintiff has alleged nothing more than two schemes of city officials attempting to harass the mayor's neighbors into selling their property and one incident involving allegedly wrongful repairs to the mayor's driveway.

In sum, the fairly limited duration of the related predicates and the narrow focus of the alleged scheme leads the court to conclude as a matter of law that the allegations in plaintiff's complaint do not state a claim for either closed-ended or open-ended continuity. The predicates did not extend over a substantial period of time and were so limited in number and isolated in motive that they do not threaten future criminal conduct so as to satisfy the closed-ended continuity standard. And, they do not pose a threat of continuing criminal activity in the future so as to satisfy the open-ended continuity standard. Again, the predicates were so limited, isolated, and sporadic that they do not involve a distinct threat of long-term racketeering activity and no reasonable inference can be drawn that the predicate acts were a regular way of conducting the defendants' ongoing legitimate businesses. Such a limited number of sporadic, albeit somewhat related, acts over such a relatively short time period simply do not pose a threat of continuing racketeering activity. *See Stone*, 998 F.2d at 1543 ("Multiple on-going activities are more likely to satisfy the continuity requirement than would be several sporadic, albeit still related, acts." ).[3]

---

[3] Although the court realizes that it may consider plaintiff's other allegations that do not rise to the level of constituting RICO predicates, *Stone*, 998 F.2d at 1544, those allegations simply are not probative of a greater degree of continuity in this case because

In this respect, the court wishes to direct attention to one of the cases which was cited by the court in its original Memorandum and Order and which is also relied on by plaintiff in his response to defendants' motions to dismiss. *DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001), was a RICO case in which a real estate developer claimed that an assortment of public officials, private individuals, and corporations illegally impeded his development by using the town of Delaware, New York, as a racketeering enterprise to extort money, real property and personal property through misuse of their public offices. The court does not find plaintiff's reliance on *DeFalco* to be persuasive because the allegations in plaintiff's complaint do not rise anywhere near the level of the egregiousness of the defendants' conduct in *DeFalco*. The plaintiff in *DeFalco* supported his allegations of corruption with specific facts of overt innuendos and directives. For example, the town supervisor told the developer that he "had to deal with the local people" and that he would help guide the developer "through the muddy waters" of real estate development in town as long as the developer followed the town supervisor's suggestions. *Id.* at 295. The town supervisor told the developer to hire specific people or companies to perform various functions, and directed the developer to pay them in certain, often indirect, ways. *Id.* As the development proceeded, the developer was forced to comply with numerous additional overt demands made by the other defendants. Thus, in *DeFalco* the acts of extortion were numerous and ongoing for an extended period of time. In contrast, here, plaintiff has alleged numerous acts of harassment, but not

---

plaintiff's other allegations involve, at best, arguably unconstitutional behavior, not criminal behavior. Consequently, those allegations do not give rise to a greater inference that the continuity element is satisfied because they do not amount to or pose a threat of the type of continuing criminal activity which RICO was designed to address.

19

extortion.  Rather, in this case, the alleged facts which would amount to extortion are sporadic and few.

The facts of this case are more akin to those at issue in *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (per curiam), which involved a dispute between neighboring landowners.  There, the Tenth Circuit held that the plaintiff's complaint failed to state a claim because he alleged a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, which did not establish a threat of continuing racketeering activity.  *Id.* at 1271.  Similarly, here, the thrust of the related predicates in plaintiff's amended complaint still pertains to a single scheme (to harass property owners near Mayor Eickhoff's land) to accomplish a discrete goal (to make them amenable to selling their land so that all of the parcels could be assembled and sold for development) directed at a finite group of individuals (the landowners on or near K-32) with no potential to extend to other persons or entities.  The third predicate involving Victor G. Construction is such a sporadic, isolated, factually distinguishable, and relatively unrelated incident that it simply does not permit an inference that Mayor Eickhoff and her comrades were engaged in a prolonged criminal endeavor of extortion.  Thus, the allegations in plaintiff's amended complaint still fail to adequately allege "the type of long-term criminal activity envisioned by Congress when it enacted RICO."  *Id.*

In sum, plaintiff's amended complaint fails to state a claim for a RICO violation because it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him to relief on

this theory.   Accordingly, defendants' motions to dismiss this aspect of plaintiff's amended complaint are granted.[4]

**B.**     *Bivens* **Claim**

Defendants contend that the court should dismiss plaintiff's *Bivens* claim because none of the defendants are alleged to be federal actors.   The court agrees.   "*Bivens* creates a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities."   *Stanko v. Maher*, 419 F.3d 1107, 1110 n.2 (10th Cir. 2005).   The allegations in plaintiff's amended complaint reveal that, to the extent defendants are government officials, they are municipal actors occupying positions as officials of the City of Edwardsville.   "Therefore, this action arises, if at all, pursuant to 42 U.S.C. § 1983 rather than *Bivens*."   *Id.*   Accordingly, defendants' motion to dismiss this aspect of plaintiff's complaint is granted because it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him to relief on this theory.

In response to defendants' argument on this point, plaintiff explains that his captioning of his § 1983 claim as a *Bivens* claim was an oversight.   Indeed, the gist of the factual allegations in plaintiff's amended complaint, if true, do seem potentially actionable as § 1983 constitutional violations.   For example, in plaintiff's amended complaint, he has described various incidents with labels such as selective prosecution, denial of equal protection of the law, deprivation of property without due process of law, vindictive municipal action, malicious silence, retaliation for exercise

---

[4] The court declines to consider the separate grounds for dismissal urged by defendant Rhodes in his motion to dismiss.   The court notes, however, that Mr. Rhodes' arguments are largely misplaced on a Rule 12(b)(6) motion to dismiss because they are not based on the allegations in plaintiff's complaint.   Rather, they are based on documents that are not referred to in plaintiff's complaint and/or central to plaintiff's RICO claim.

of constitutional rights, and/or retaliatory prosecution.  As such, the proper remedy is to allow plaintiff to amend his complaint.  *Cf. Bolden v. City of Topeka*, No. 04-3306, 2006 WL 701151, at *7-*8 (10th Cir. Mar. 21, 2006) (publication forthcoming) (pro se plaintiff should have been permitted to amend his complaint to clarify that he was bringing his § 1981 claim under § 1983).[5]

To that end, the court wishes to clarify that in allowing plaintiff to file yet another amended complaint, plaintiff should not reassert his RICO claim in his second amended complaint.  Plaintiff has been unable to cure the pleading defects in his RICO claim after an opportunity to do so, and therefore the court is dismissing that claim with prejudice and plaintiff does not need to reassert that claim in order to preserve his right to appeal the court's ruling on that issue.  Of course, if discovery later reveals facts beyond those currently alleged in plaintiff's amended complaint which would state a claim for a RICO violation, plaintiff may seek leave to file an amended complaint to reassert his RICO claim, if he wishes to do so and the court might be willing to reconsider its ruling on this issue.  At this time, however, the court is only granting plaintiff leave to file a second amended complaint which asserts claim(s) pursuant to § 1983.  The court is not granting plaintiff leave to assert any new claims other than those based on facts which he has already pled; it is only permitting him to reassert them as claims under § 1983.[6]

---

[5] The court will not consider defendants' argument that the court should dismiss plaintiff's claim for injunctive relief.  In plaintiff's response brief, he states that he is seeking injunctive relief on his § 1983 claim.  Because the court is dismissing plaintiff's *Bivens* claim and because he has not yet alleged a § 1983 claim, defendants' argument is moot and/or premature.

[6] The court rejects defendants' request for attorney fees pursuant to § 1988 and Fed. R. Civ. P. 11.  Defendants have presented no argument in support of this conclusory request and the court finds no basis for such an award at this procedural juncture.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions to dismiss (Docs. 63 & 65) are granted with prejudice as to plaintiff's RICO claim but without prejudice to plaintiff filing a second amended complaint on or before **April 24, 2006**, which is consistent with this Memorandum and Order.

**IT IS SO ORDERED** this 7th day of April, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23